UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA LEONA BROWN FLEMING, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHEROKEE NATION, *et al.*<br><br>Defendants. | Civil Action No. 19-1397 (TFH) |

## MEMORANDUM OPINION

Plaintiffs Rhonda Leona Brown Fleming and the Harvest Institute Freedom Federation LLC ("Harvest Institute") filed this class action against the Secretary of the Interior and the Assistant Secretary—Indian Affairs (the "federal defendants"), and the Cherokee Nation, the Cherokee Nation Election Commission, and the Principal Chief of the Cherokee Nation Bill John Baker (the "tribal defendants"). The plaintiffs have twice sought a temporary restraining order to enjoin or delay the June 1, 2019 election for Principal Chief of the Cherokee Nation, which this Court has twice denied. Pending before the Court now are Ms. Fleming's motion for a preliminary injunction [ECF No. 2] and motions to dismiss filed by the tribal defendants [ECF No. 8], and the federal defendants, [ECF No. 11].

I.   FACTUAL BACKGROUND

The plaintiffs are Rhonda Leona Brown Fleming, a Cherokee citizen and descendent of Cherokee Freedmen, and the Harvest Institute Freedman Federation, LLC, which seeks "redress through the courts to compel the United States and the Cherokee Nation to perform obligations" to Cherokee Freedmen under federal law. Compl. ¶¶ 10–11. As set forth in their complaint, Ms.

1

Fleming would like to run for the position of Principal Chief of the Cherokee Nation. Compl. ¶ 10. However, the plaintiffs assert that Article VII, Section 2 of the Cherokee Nation Constitution, which limits eligibility for election to the office of Principal Chief to Cherokee "citizen[s] by blood" who are also domiciled within the boundaries of the Cherokee Nation for at least 270 days prior to the election, is impeding Ms. Fleming's ability to run in the election. Compl. ¶ 2.

In a lengthy opinion, this Court held that "the Cherokee Freedmen have a present right to citizenship in the Cherokee Nation that is coextensive with the rights of native Cherokees." *Cherokee Nation v. Nash*, 267 F. Supp. 3d 86, 140 (D.D.C. 2017). The Court concluded that "any Cherokee Freedmen descendant who qualifies for citizenship in the Cherokee Nation shall have all the benefits and privileges of such citizenship on the same terms as other citizens of the Cherokee Nation." Order and Judgment at 2, *Cherokee Nation v. Nash*, No. 13-cv-1313 (D.D.C. Feb. 20, 2018) [ECF No. 257] (hereinafter "Nash Order"). The Supreme Court of the Cherokee Nation has adopted this Court's ruling in *Cherokee Nation v. Nash* as "enforceable within and against the Cherokee Nation," and has explicitly held that "the 2007 amendment to the Constitution that purported to limit citizenship within the Cherokee Nation to Cherokees by blood, Delaware Cherokees and Shawnee Cherokees is . . . void and without effect." Fed. Defs.' Mem. Supp. Mot. Dismiss Ex. 1, *In re: Effect of Cherokee Nation v. Nash and Vann v. Zinke*, No. SC-17-07 (S. Ct. of the Cherokee Nation Sept. 1, 2017) [ECF No. 11-2]. It further held that "eligible Freedmen descendants . . . upon registration as Cherokee Nation citizens shall have all the rights and duties of any other native Cherokee, *including the right to run for office*." *Id.* (emphasis added).

The plaintiffs do not claim that the "by blood" provision has been enforced against Ms. Fleming, or that she has been denied the right to stand in the elections because she is the

descendent of Cherokee Freedmen.[1] Although the Cherokee Nation Election Commission has determined that she is ineligible to run for Principal Chief, it did so because she did not "meet the 270 days residency requirement within the jurisdictional boundaries of the Cherokee Nation"—she resides in California, outside the boundaries of the Cherokee Nation. Tribal Defs.' Opp'n to Pls.' Mot. Prelim. Inj. Ex. 2, *In Re: Challenge to the Eligibility of Rhonda Brown-Fleming, Candidate for Chief, for the 2019 General Election*, Eligibility Hearing No. 2019-5 (Cherokee Nation Election Comm'n Feb. 21, 2019) [ECF No. 6-2]; *see also* Compl. ¶ 10. The Cherokee Nation Election Commission also stated that "any challenge to the candidate on the basis that she is not Cherokee by blood has no validity and Cherokee Freedman Citizens are eligible to run for office if they meet all other requirements for the office, applicable to all Cherokee Citizens." *Id*. The Cherokee Supreme Court affirmed that decision. Tribal Defs.' Opp'n to Pls.' Mot. Prelim. Inj. Ex. 3, *In Re: Challenge to the Eligibility of Rhonda Brown Fleming, Candidate for Chief for the 2019 General Election*, No. SC-2019-02 (S. Ct. of the Cherokee Nation Mar. 11, 2019) [ECF 6-3]; *see also* Compl. ¶ 10.

## II. PROCEDURAL BACKGROUND

The plaintiffs filed their original complaint on August 30, 2018. *Fleming v. Cherokee Nation*, No. 18-cv-2041 (D.D.C. May 14, 2019) [ECF No. 1].[2] Along with the complaint, Ms. Fleming filed a motion for a temporary restraining order seeking to restrain the Cherokee Nation from enforcing the "citizen by blood" provision of the Cherokee Nation Constitution, [ECF No. 2], which the Court denied, [ECF No. 7]. The federal and tribal defendants moved to dismiss the plaintiffs' complaint on December 4, 2018. [ECF Nos. 10 & 11]. Although the Court granted the plaintiffs' belatedly-filed motion for an extension of time to file a response, the plaintiffs did not

---

[1] They do, however, ask that this Court enjoin the enforcement of that provision.
[2] All subsequent citations in this paragraph refer to case No. 18-cv-2041.

oppose the motions to dismiss. Minute Order, Apr. 11, 2019. Ms. Fleming did, however, file a renewed motion for a preliminary injunction on March 22, 2019. [ECF No. 15]. On May 14, 2019, the Court granted the defendants' motions to dismiss as conceded, and denied the plaintiff's motion for a preliminary injunction as moot. [ECF No. 20]. The Court dismissed the complaint without prejudice. *Id.*

That same day, the plaintiffs filed a new complaint in the instant case seeking declaratory and injunctive relief, along with a motion for a temporary restraining order and preliminary injunction. [ECF Nos. 1 & 2]. These filings stemmed from the same facts, and raised identical challenges as the previous filings.[3] The Court held a telephonic hearing on the motion for a temporary restraining order on May 21, 2019, and denied the motion. Minute Order, May 21, 2019. The Court then set an accelerated schedule for motions to dismiss. *Id.* Both the tribal and federal defendants filed motions to dismiss on May 23, 2019, arguing, *inter alia*, that the Court lacks jurisdiction over the plaintiffs' claims. [ECF Nos. 8 & 11]. They also opposed the motion for a preliminary injunction. [ECF Nos. 6 & 12]. The plaintiffs filed their opposition to the motions to dismiss on May 28, 2019, missing the Court-imposed deadline by one day. [ECF No. 13].

## III. LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss a complaint if it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When evaluating a motion to dismiss, the court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks

---

[3] Although the plaintiffs filed the instant case as "related" to the previous one, because the cases are identical, the Court treats them as one for the purpose of this memorandum opinion. [ECF No. 3].

4

omitted). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation . . . or to accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted). Because Rule 12(b)(1) motions go to a court's jurisdiction, the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The plaintiff bears the burden of demonstrating subject matter jurisdiction. *Rempfer v. Sharfstein*, 583 F.3d 860, 868 (D.C. Cir. 2009).

### IV. DISCUSSION

#### A. Ms. Fleming Lacks Constitutional Standing

The tribal defendants argue that the plaintiffs lack constitutional standing to bring their claims because they have not alleged that they have suffered an injury in fact caused by the tribal defendants' violation of the Nash Order. Tribal Defs.' Mem. Supp. Mot. Dismiss at 10. The federal defendants contend that Ms. Fleming lacks constitutional standing because the alleged injury she suffered was not caused by the federal defendants, and cannot be redressed by an order against them. Fed. Defs.' Mem. Supp. Mot. Dismiss at 9. The plaintiffs do not respond to these arguments.

Constitutional standing is "one of the essential prerequisites to jurisdiction under Article III." *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915 (D.C. Cir. 2003). In order to establish standing, a plaintiff must show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To

establish an injury in fact, the plaintiff "must show that . . . she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). When seeking injunctive relief, plaintiffs must show that they face "imminent future injury." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015). It is the plaintiff's burden to establish the elements of standing. *Lujan*, 504 U.S. at 561.

The plaintiffs have not alleged an injury in fact sufficient to demonstrate that Ms. Fleming has standing in this litigation. The plaintiffs do not allege that the tribal defendants are enforcing or will enforce the now void Section VII, Article 2 of the Cherokee Nation Constitution against the plaintiffs, or that the tribal defendants are otherwise discriminating against them in the election for Principle Chief. The Cherokee Nation Election Commission found Ms. Fleming ineligible to run because she did not meet the Cherokee Nation Constitution's 270-day domicile requirement, which applies to all Cherokee citizens. As a result, the plaintiff has failed to demonstrate that she faces a substantial probability of injury, let alone the "imminent future injury" required when seeking a preliminary injunction. *Swanson Grp.*, 790 F.3d at 240 (D.C. Cir. 2015); *see also id.* ("to shift injury from conjectural to imminent," the plaintiff "must show that there is a substantial probability of injury.") (internal quotation marks omitted and alterations adopted).

The plaintiffs contend that the tribal defendants have violated the Nash Order, alleging that "a simple reading of the Constitution as it stands requires a potential candidate to divine which provisions the Tribe will enforce," and that Article VII, Section 2 of the Cherokee Nation Constitution is an "affront to Freedmen." Pls.' Opp'n Mots. Dismiss at 3, 8 [ECF No. 13]. Even if the continued presence of Article VII, Section 2 in the Cherokee Nation Constitution confuses

and offends Cherokee Freedmen, these effects do not violate the Nash Order because they do not impact the "benefits and privileges" of the Cherokee Freedmens' citizenship. Nash Order at 2. The plaintiffs do not allege what other legally protected interest the continued existence of this voided provision invades—the Cherokee Supreme Court and the Cherokee Nation Election Commission have both explicitly stated that the provision is no longer valid and enforceable. *See, e.g., Crow Creek Sioux*, 331 F.3d at 917 (finding the "possibility" that the Secretary of the Army would not enforce a statute, despite retaining full enforcement authority and despite the ongoing applicability of the statute, to be "unsupported conjecture" that "does not constitute injury in fact."). Ms. Fleming could have resolved her uncertainty about her eligibility to run in the elections by placing a timely phone call to the Cherokee Nation Election Commission. Her failure to do so, and subsequent disqualification from the election, does not give rise to an injury in fact.

The plaintiffs hook the federal defendants into their lawsuit by arguing that the federal defendants are responsible for protecting the voting and election rights of the Cherokee Freedmen. Compl. ¶¶ 27, 34. Even if the plaintiffs had alleged an injury in fact, the plaintiffs do not point to any authority, statute, or treaty imposing this duty on the federal defendants.[4] *See Shohonne-Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir. 1995) (discussing the federal government's trust relationship with Indian tribes and noting that "an Indian tribe cannot force the government to take a specific action unless a treaty, statute or agreement imposes, expressly

---

[4] At most, the plaintiffs cite the "Treaty of July 19, 1866" and the "Act of 1970" amongst a string of authorities related to subject matter jurisdiction. Compl. ¶ 5. They do not cite any specific provisions from these authorities, which the Court examined in *Cherokee Nation v. Nash*, and they do not allege why they impose a duty on the federal government to oversee Cherokee elections. *See Cherokee Nation*, 267 F. Supp. 3d at 97-102, 140 (discussing the background of both the 1866 Treaty and the "Principal Chiefs Act").

7

or by implication, that duty."). Without alleging why the federal government should have, but has not, interfered in the Cherokee elections, the plaintiffs' alleged injuries have no "causal connection" to the federal defendants and are not "fairly traceable" to them. *Lujan*, 504 U.S. at 560 (alterations adopted).

For a similar reason, the plaintiffs' asserted injuries are not redressable by an order against the federal defendants. Even if the Court granted all the relief that the plaintiffs request, including enjoining the election for Principal Chief of the Cherokee Nation and barring the enforcement of Article VII, Section 2 of the Cherokee Nation Constitution, it would not remediate the plaintiffs' alleged injuries because the federal defendants have no connection to them. *See, e.g., Reaves v. United States Dep't of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) (finding that the plaintiffs lacked standing against the federal government because the court could "grant no relief *vis a vis* the federal defendants that would redress plaintiffs' alleged injury."). Ms. Fleming lacks standing to bring her claims against the defendants.

B. The Harvest Institute Lacks Constitutional Standing

The federal defendants argue that the Harvest Institute has not shown associational or organizational standing because it "relies only on unidentified members and does not claim that its activities or resources have been injured by the actions of the [f]ederal [d]efendants." Fed. Defs' Mem. in Supp. of Mot. to Dismiss at 9. The plaintiffs have not responded to these arguments.[5]

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the

---

[5] The Harvest Institute does not assert that it has organizational standing in its complaint or other filings, so the Court finds it unnecessary to address the issue.

participation of individual members in the lawsuit." *Friends of Earth, Inc. v. Laidlaw Environ. Serv. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

The Harvest Institute has not established that its members would have standing to sue either the federal or tribal defendants in their own right. The plaintiffs do not assert that Ms. Fleming is a member of the Harvest Institute. Even if she were, the Court has already determined that she lacks standing to sue the defendants. Meanwhile, the plaintiffs describe the Harvest Institute's membership as "comprised of persons with African and Native American ancestry, each of whom has standing to sue in their own right." Compl. ¶ 11. Such a vague description is inadequate to demonstrate that the Harvest Institute's members have standing—the plaintiffs do not even allege that the Harvest Institute's members are Cherokee. *See Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006) ("an organization bringing a claim based on associational standing must show that at least one specifically-identified member has suffered an injury-in-fact."); *Tanner-Brown v. Zinke*, 709 F. App'x. 17, 20 (D.C. Cir. 2017) (affirming district court denial of standing to the Harvest Institute based on a similar description of its membership). The Harvest Institute does not have associational standing to proceed in this litigation.

## IV. CONCLUSION

Because the plaintiffs do not have standing, the Court lacks jurisdiction over their claims, and does not reach the other arguments the defendants raised in their motions to dismiss. For the foregoing reasons, the defendants' motions to dismiss will be GRANTED, and the plaintiff's motion for a preliminary injunction will be DENIED as moot.

May 31, 2019

_____
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE